IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERENCE C. POWELL                                                                    PLAINTIFF

v.                                          Civil No. 2:20-cv-02133

DEPUTY SAMMY ROGERS and                                              DEFENDANTS
OFFICER JUDKINS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions
of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable P. K. Holmes, III, United States District
Judge, referred this case to the undersigned for the purpose of making a Report and
Recommendation.  Currently before the Court is Defendants' Motion for Summary Judgment.
(ECF No. 19).

## I.        BACKGROUND

Plaintiff filed his Complaint on August 3, 2020 (ECF No. 1), along with his application to
proceed *in forma pauperis* (ECF No. 2).  Plaintiff was granted leave to proceed *in forma pauperis*
pursuant to the Prison Litigation Reform Act ("PLRA").  (ECF No 3).  Plaintiff is currently
incarcerated at the Arkansas Division of Correction ("ADC"), Cummins Unit.  (ECF No. 18).  The
incidents in question allegedly occurred at the Sebastian County Detention Center ("SCDC") on
or about July 12, 2020, where Plaintiff was being held as a pretrial detainee.  (ECF No. 1).  Plaintiff
alleges that on July 12, 2020, his right to practice his religion was violated and excessive force
was used against him in his cell.  (*Id.*, pp. 4-5).  Specifically, Plaintiff alleges that Defendant
Rogers and Deputy Blythe[1] threw several of his religious books out of his cell and only gave him

---

[1] Plaintiff did not name Deputy Blythe as a Defendant in his complaint.  (ECF No. 1 at 2-3).

back two books by Mark Cahill.  (*Id*., p. 5).  He further alleges that on the same day, Defendant Judkins tazed him while he was face down on the ground with his hands in handcuffs behind his back.  (*Id*.).  He alleges the prongs from the Tazer went into his back.  (*Id*.).

Plaintiff proceeds against both Defendants in their official and individual capacity.  (ECF No. 1, pp. 4, 5).  Plaintiff seeks compensatory damages and punitive damages.  (*Id*. at 8).  The compensatory damages sought are either replacement books or monetary compensation for them.  Plaintiff also feels as though he should be compensated for the pain and suffering he endured during the excessive force.  (*Id*.).

Defendants filed a motion for Summary Judgment on January 22, 2021.  (ECF No. 19).  On January 25, 2021, the Court entered an order directing Plaintiff to file a response to the motion.  (ECF No. 22).  Plaintiff filed his Response on February 8, 2021.  (ECF No. 23).  He filed his Statement of Facts on February 26, 2021.  (ECF No. 25).

Defendants argue that summary judgment in their favor is appropriate because: (1) Plaintiff was not prohibited from exercising a sincerely held religious belief; (2) Plaintiff does not have a claim for the deprivation of personal property; (3) Plaintiff was not subjected to excessive force; and (4) Defendants are entitled to qualified immunity.  (ECF No. 20).

### Defendants' Version of the Events

On July 11, 2020,[2] Deputy Blythe was conducting cell "shakedowns."  (ECF No. 21, p. 1).  While he was doing so, Plaintiff started yelling that "he was ready for me to pop his door and if I did that, he was going to throw juice at me and then rush me."  (*Id*.).  Blythe called for additional deputies and once they were in place called for the door to be opened.  (*Id*.).

---

[2] Contrary to Plaintiff's allegations that the events occurred on July 12, 2020, Deputy Blythe's report states that the events occurred on July 11, 2020.

In an incident report, Deputy Blythe reported that once the cell door was open Defendant Judkins instructed Plaintiff to get on his knees and Plaintiff complied. (ECF No. 21, p. 1). Defendant Rogers then stepped in to apply handcuffs, but Plaintiff resisted giving up his hands for the cuffs to be applied. (*Id*.). Defendant Judkins pulled the taser out and gave Plaintiff the command to give up his hands, but Plaintiff did not comply so the taser was deployed to gain control of Plaintiff's hands. (*Id*.). The shakedown was then completed, and medical assistance was offered but declined by Plaintiff. (*Id*.).

Defendant Judkins's incident report stated that Plaintiff complied with his initial order to get on his knees, but Plaintiff resisted when Defendant Rogers ordered him to give up his hands to be handcuffed. (ECF No. 21, pp. 1-2). Defendant Judkins then gave a verbal order to give up his hands and stop fighting or he would be tased. (*Id*.). Plaintiff refused and tried to roll off his stomach towards Judkins, so Judkins deployed the taser into the upper left shoulder area of Plaintiffs back, which then allowed Defendant Rogers to apply the handcuffs. (*Id*. at 2). Incident reports written by Defendant Rogers and Deputy Torres are consistent with Defendant Judkins's and Deputy Blythe's reports. (Id., pp. 2-3).

Regarding Plaintiff's claims about his religious texts, Plaintiff's intake form indicates that when arrested and booked he had on him only shoes, belt, coat, earbuds, and two debit cards. (ECF No. 21-2). Defendant Rogers only reported removing extra linens in his incident report. (ECF No. 21 at 2).

### Plaintiff's Version of the Events

Plaintiff alleges that while he laid on the ground in his cell, face down on his stomach, with his hands cuffed behind his back, he was tased by Defendant Judkins. (ECF No. 1, p. 5). He alleges that the prongs of the taser went in his back. (*Id*.). In a request report, Plaintiff mentioned

that there was a knee on his back, which he believed to belong to Defendant Rogers, and he insists that he was tased after he was handcuffed.  (ECF No. 1, p. 8; ECF No. 25, p. 1).  Plaintiff has only brought claims against two people, but he alleges that there were seven deputies present when he was tased by Defendant Judkins.  (ECF No. 23, p. 3).

Plaintiff also alleges that his First Amendment right to practice his religion was violated when Defendant Rogers threw several of his religious books out of his cell during the cell check. In his grievance report, Plaintiff states that Deputy Blythe returned to him some books by Mark Cahill, "Ten Questions from the King" and "One Thing You Can't do in Heaven."  (ECF No. 21-3, p. 1).  In his Response to the Motion for Summary Judgment, Plaintiff states that the books returned were fiction.  (ECF No. 23, p. 2).  Plaintiff also alleges that Blythe told him he placed the other books in the vestibule.  (ECF No. 21-3).  He claims these missing books are called "The Watchman," "The Fundamentals of Tawhide," "What Jesus Really Said," two books from the "left behind series," and a Bible.  (*Id.*).

Plaintiff is a Sunni Muslim and claims that he got his religious material from, "Jedideus Kursch," the Imam leader.  (ECF No. 23, p. 2).  He claims that to properly exercise his religion, his religious material must have a Hadith or a Sunnah, a Quran and "What Jesus Really Said." (*Id.*).  Plaintiff explains that the Hadith or Sunnah is "basically a doctrine" that explains the Quran and keeps the Quaran from being altered.  (*Id.*).

### Video Camera Evidence

The video camera footage from the time of the incident does not show what happened in the Plaintiff's cell, but it does capture the actions of Deputy Blythe both before and after the incident, as well as the actions of the additional deputies who did not enter Plaintiff's cell.  (Exhibit A-5, filed conventionally on January 25, 2021).  The video starts at timestamp 15:45:00.  The

video shows Deputy Blythe entering and exiting multiple cells holding a clear plastic bag that contains articles taken while conducting "shakedowns." He approaches Plaintiff's cell at 15:51:00 but does not open the door. Additional deputies arrive at 15:52:00, but one leaves and returns at 15:55:09 holding what appears to be a holster and then hands it to one of the deputies who puts it on. They then position themselves around the door.

The door is opened at 15:56:00 and two deputies enter the cell from the right, one deputy enters from the left, and the four remaining officers stand outside the cell looking in. At 15:57:18 linens are removed and placed on the ground in the walkway behind the officers. 15:57:59 the officers standing around the cell door are seen kicking/sliding items across the floor to the pile on the walkway. At 15:58:25 a couple of items are tossed from the cell. 15:59:40 one of the officers outside the cell walks over to the pile bends over and picks up a couple items and appears to hand them to another officer outside the cell. Then at 16:00:30 the officer the items were handed to sets them back down in the pile.

All officers exit the cell at 16:04:08. The door is closed, and all officers disperse. At 16:09:20 Deputy Blythe is seen walking back up to tier 2 with an empty plastic bag and filling it with the things removed from Plaintiff's cell. At 16:10:20 he appears to walk over to Plaintiff's cell and talk to him briefly, he then slides two items (presumably books), under Plaintiff's door. He then proceeds to continue picking up the confiscated items. At 16:11:55 he tosses something down in front of Plaintiff's door, and Plaintiff presumably pulls it under the door. At 16:13:25 Deputy Blythe walks away from Plaintiff's cell holding a plastic bag filled with items and has his arms full of what appear to be books, but this is not entirely clear.

## II.     LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor."  *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.     ANALYSIS

### A.  Religious Freedom Claim

Prisoners retain their constitutional rights, but limitations may be placed on the exercise of those rights considering the needs of the penal system. *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004).  "To be protected by the free exercise clause of the first amendment,

or by RLUIPA, beliefs must meet two requirements: (1) they must be religious, (2) and they must be sincerely held . . . one must be specific as to what [his] religious belief is and why [he] thinks it is being violated." *Holloway v. Pigman*, 844 F.2d 365, 367 (8th Cir. 1989). Generally, courts are reluctant to find beliefs insincere on summary judgment. *Murphy*, 372 F.3d at 983. "The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are 'reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002) (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987); *O'Lone v. Shabazz*, 482 U.S. 342, 348–349 (1987); *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972). Plaintiff claims that his right to religious freedom was violated when multiple religious books were removed from his cell and only a couple of books were returned.

First, we must consider whether the challenged governmental action "infringes upon a sincerely held religious belief, then we must apply the *Turner* factors to determine if the regulation restricting the religious practice is reasonably related to legitimate penological objectives. *Murphy*, 372 F.3d at 983 (quoting *Hamilton v. Schrino*, 74 F.3d 1545, 1550 (8th Cir. 1996)); and *O'Lone*, 482 U.S. at 353. The four *Turner* factors include: whether there is a valid rational connection between the prison regulation and the government interest justifying it; whether there is an alternative means available to the prison inmates to exercise the right; whether an accommodation would have a significant ripple effect on the guards, other inmates, and prison resources; and, whether there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests. *Turner*, 382 U.S. at 89-91.

Defendants argue that Plaintiff has failed to show that the government's action of confiscating all but two of his religious texts has infringed upon his sincerely held religious belief. (ECF No. 20, pp. 5-7). They further argue that there is a legitimate penological need to conduct

cell searches.  (*Id*., p. 6).  In his Response to the Motion for Summary Judgment, Plaintiff states that he is a Sunni Muslim and that the Hadith or Sunnah, the Quran, and "What Jesus Really Said," are the only books that help [him] exercise [his] religion."  (ECF No. 23, p. 2).  Plaintiff alleges that both his "Bible/Quran" and "What Jesus Really Said" were taken on July 11, 2020, and that he was left with "Ten Questions From the King" and "One Thing You Can't do in Heaven."  (ECF No. 21-3).  Defendants agree that Plaintiff's interest in reading religious material is a sincerely held religious belief, but they disagree that Defendant Roger's actions and detention center regulations restricted his sincerely held religious belief.  They focus on the legitimate need for cell searches; however, the confiscation rather than the search is the issue, and Defendants have not claimed any penological interest in confiscating the books.  Plaintiff claims that the two books returned to him were fiction and not the material he needed to exercise his beliefs.  Defendants have provided no summary judgment evidence to the contrary.  The video confirms both that multiple books were taken from Plaintiff's cell, and that some books were returned to him. Viewing the facts most favorably to Plaintiff, there is a genuine question of material fact as to whether the books returned were religious material and whether the other books' confiscation was justified.

### 1.  Qualified Immunity Defense

The standard for religious freedom is clearly established. There are two prongs to a qualified immunity analysis.  *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012).  A court must determine whether a constitutional right has been violated and whether that right had been clearly established at the time of the alleged violation.  *Id*.  Defendants claim in their Motion for Summary Judgment that Plaintiff failed to meet the first prong, that a constitutional right had been violated, therefore they are entitled to the protection of qualified immunity.  However, construing

all facts in the light most favorable to the plaintiff, if the religious texts taken by Defendants were his Quran/Bible or other basic religious materials and the ones returned were fiction and not helpful in practicing his religion, the unjustified confiscation would be a constitutional violation.  The next question is whether the right had been clearly established at the time of the alleged violation.  In deciding the qualified immunity question, the Court should "ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable or more reasonable interpretation of the events can be construed."  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

Here, at the time of the incident it was established law that a prisoner has the right to practice his religion, and that includes reading and having access to religious material.  It is also established that any restriction must be reasonably related to a penological interest.  Again, construing the facts in Plaintiff's favor, Defendant Rogers removed basic religious materials without any penological justification.  Since there exists a question of material fact whether a constitutional violation occurred when Plaintiff's religious texts were confiscated, and the standards governing a free exercise claim are clear, Defendant Rogers is not entitled to summary judgment based on qualified immunity at this time.

## 2.  Official Capacity Claim

A county is liable only for constitutional violations caused by the local government's official policy.  Official policy includes written policy, custom (unwritten policy), and the conduct of a policymaker.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  A county or other local government is liable under § 1983 only when "execution of a government policy or custom . . . inflicts the injury."  *Id*. at 694.

9

The written policy of SCDC states that an "inmate will have the freedom to exercise their religious beliefs, subject only to those limitations necessary to maintain the security and order of the facility." (ECF No. 21-7, p. 4). Decisions which have an adverse effect on an inmate must be rationally related to the effectuation of order and security within the jail. "Inmates will be afforded the opportunity to possess religious study materials for the purpose of practicing their faith. The jail administrator will be responsible for approving the possession of these materials as long as they do not threaten the security or order of the facility." (*Id.*, p. 13). These guidelines establish reasonable restrictions on the practice of religion that are allowable under the First Amendment. The SCDC's policies only allow for restrictions on access to religious materials when security and order of the facility requires it.

Defendants have not asserted any security interest furthered by their confiscation, so their actions may not comply with SCDC's policy. A violation of policy, however, cannot support an official capacity claim. *See Monell v. Department of Soc. Srvs.*, 436 U.S. 659, 690-91 (1978) (violation must result from the governmental entity's custom or policy). It is concerning that after reviewing the grievance filed by Plaintiff the reviewing officers did not remedy the situation, but Plaintiff has not asserted that this reflects a custom of the detention center. Further, Plaintiff has not alleged that there was a custom in place that authorized the Defendant's actions, and a single incident cannot establish a custom contradictory to written policy. *See Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (multiple incidents involving a single plaintiff can establish the existence of a custom conflicting with written policy).

Instead, Plaintiff simply says he wants to sue "whatever governmental entity that created the custom or policy that gave him the right to throw my Bible/Quran and other religious books in the trash." (ECF No. 1). Even when construing the facts in Plaintiff's favor, there is no genuine

question of material fact as to whether a custom was in place which directed or authorized Defendant Rogers' actions. Plaintiff's injury was not caused by SCDC policy, nor has Plaintiff alleged any custom that caused his injury. Defendant Rogers is entitled to summary judgment as a matter of law on the official capacity claim.

## B.  Deprivation of Personal Property

Plaintiff has failed to state a cognizable claim under § 1983 for the alleged confiscation of his religious books during the cell search. *See Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 793 (8th Cir. 2004) (no cause of action for the taking of personal property as long as the state provides an adequate post-deprivation remedy). Even if the deprivation of his property was intentional, there is no Due Process violation when the state has provided Plaintiff with adequate post-deprivation remedies. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Arkansas provides the post-deprivation remedy of conversion for the recovery of personal property. *See Elliot v. Hurst*, 817 S.W.2d 877, 880 (1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Accordingly, because Plaintiff could seek redress in Arkansas state courts to recover his lost property, he has no plausible claim pursuant to § 1983 in this regard. Summary judgment as a matter of law is, therefore, appropriate for this claim.

## C.  Excessive Force Claim

The law is clear that a pretrial detainee cannot be punished. See e.g., *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). The Supreme Court held that a pretrial detainee need only show that a Defendant's use of force

was objectively unreasonable to prevail on an excessive force claim.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  The objective reasonableness of a use of force "turns on the 'facts and circumstances of each particular case.'"  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The determination should be made from the perspective of a reasonable officer on the scene.  A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* (quoting *Bell*, 441 U.S. at 540).

In determining whether a given use of force was reasonable or excessive, the Supreme Court said the following may bear on the issue: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.  *Id.* The Court noted that the list was not exclusive but instead only illustrated the "types of objective circumstances potentially relevant to a determination of excessive force."  *Id.*

With respect to the use of tasers, the Eighth Circuit has found that "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat." *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009) (Eighth Amendment case); see also *Walton v. Dawson*, 752 F.3d 1109, 1116-17 (8th Cir. 2014) ("the Fourteenth Amendment gives state pretrial detainees . . . rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner") (quotation marks and citation omitted).  The Eighth Circuit noted that a review of the case law "revealed that the use of force was justified when there was a concern for the safety of the institution, the jailers, and the inmates."  *Id.*

12

We must view the facts in the light most favorable to Plaintiff in determining if there is any genuine dispute of a material fact.  The facts presented by the parties differ only on the issue of whether Plaintiff was actively resisting handcuffs when he was tased.  Plaintiff claims that he was face down on the ground with his hands cuffed behind his back when Defendant Judkins tased him.  He neither affirms nor denies whether he had threatened to "rush" Deputy Blythe as he was doing "shakedowns."  The video evidence does not show when Plaintiff was tased – whether before or after he was handcuffed.  If Plaintiff's version of events is taken as true, there would be an unnecessary, excessive, and punitive use of force. The use of a taser would be objectively unreasonable in the circumstances if Plaintiff posed no reasonable threat to officer safety or jail security.  When deciding whether a use of force is excessive or reasonable, the Court should consider the relationship between the need for force and the amount of force used; the extent of the injury; any effort made by the officer(s) to limit the force used; the severity of security problem; the threat reasonably perceived; and whether the inmate was actively resisting.  Here, the evidence does not establish the existence of a security problem; there were seven deputies present, three of whom are seen on camera simply observing.  There is one inmate out in the pod who appears to pay no attention to what is happening and instead seems to be watching a tv while the situation unfolds.  According to detention center policy, a taser should only be used if an individual is exhibiting behavior that presents an imminent risk of serious physical injury to themselves or others, and the taser will only be applied the number of times necessary to remove that threat of injury to self or others.  Here, the taser was only deployed once.

Defendants claim that the video confirms their version of events because Deputy Blythe can be seen conducting cell shakedowns without issue until reaching Plaintiff's cell and then calling for additional deputies.  This may confirm the first part of the incident, but it does not

confirm when Plaintiff was tased. The undisputed facts indicate that while conducting cell shakedowns, Deputy Blythe called for assistance to handle Plaintiff's shakedown, and that Defendant Judkins tased Plaintiff and Defendant Rogers handcuffed him at some point. The critical question concerns the timing of these events. Weighing the credibility of the parties' different accounts of these events is a job for the jury. A genuine issue of material fact exists as to whether Plaintiff was face down on the floor and handcuffed when he was tased.

### 1. Qualified Immunity Defense

For one to be liable in their individual capacity they must have notice that their actions violate an individual's right. First, the Court must determine whether the facts demonstrate a deprivation of a constitutional right. Second, the Court must then consider whether the implicated right was clearly established at the time of the deprivation. *Jones v. McNeese*, 675 F.3d at 1161. To do this, the Court must examine the information possessed by the governmental official accused of wrongdoing to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law. *Id*. The question is whether the law at the time of the events in question gave the officer fair warning that this conduct was unconstitutional. *Id*. Whether the facts demonstrate a deprivation of a constitutional right cannot be conclusively answered at this time, so qualified immunity turns on whether the law gave the officer a fair warning that this conduct was unconstitutional.

*Kingsley* established the objectively reasonable standard for excessive force against pre-trial detainees, and *Bell* establishes that pre-trial detainees cannot be punished. These standards were in place at the time of the incident; therefore, Defendant Judkins had notice that any force used must be reasonable in relation to the threat perceived. If Defendant Judkins is found to have violated Plaintiff's constitutional right, then he is not entitled to qualified immunity. Since there

14

is a genuine question of material fact regarding whether a constitutional violation occurred, and the standards governing excessive force are clear, Defendant Judkins is not entitled to summary judgment based on qualified immunity.

## 2.   Official Capacity

A county is liable only for constitutional violations caused by the local government's official policy.  Official policy includes written policy, custom (unwritten policy), and the conduct of a policymaker.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  A county or other local government is liable under § 1983 only when "execution of a government policy or custom . . . inflicts the injury." (*Id.* at 694).  Plaintiff describes the policy or custom that he believes caused the violation of his constitutional rights as, "I want to assert whatever custom or policy that gave him or made him think he had the right to attack me while I was unarmed and cuffed with his Taser."  (ECF No. 1, p. 6).  Here, there are SCDC guidelines given to deputies regarding how to properly handle a situation that warrants force and when force is warranted:

> "D.      In situations where immediate physical harm does not appear to be imminent, jail deputies will initiate the following alternatives prior to using force on any inmate:
>
>> 1.) Verbally address the inmate and attempt to persuade him/her to stop the behavior;
>> 2.) Request assistance from either jail deputies, or the supervisor on duty who by virtue of their presence, may persuade the inmate to stop his/her behavior; and,
>> 3.) Verbally advise the inmate as to the consequences that will occur if he/she does not stop the behavior."

(ECF No. 21-7, p. 7).  If a situation warrants the use of force to restrain an inmate and stop him/her from inducing physical harm on another deputy, inmate, or self, then jail deputies may use physical holds and take down techniques to gain control of an inmate.  (*Id.*)  Here, it is unknown if there was a "take down" technique that Defendant Rogers or Defendant Judkins could have used before

15

using a Taser on Plaintiff.  But the existence of additional possible takedown techniques is not dispositive because "tasing an inmate . . . who is under control is not permitted," and here the critical issue turns on whether or not Plaintiff was under control at the time of tasing.  (*Id*., p. 8).

Taking Plaintiff's version of events as true, Defendant Judkins did not follow SCDC policy and, therefore, Sebastian County policy did not direct or authorize his actions.  SCDC only authorizes the use of Tasers when there is a serious threat of injury, and only after other take-down and warning steps are first taken.  These standards are consistent with the constitutional requirement that force only be used against pre-trial detainees when threats are present.  Therefore, the SCDC's policies are not the cause of Plaintiff's injuries, and Plaintiff has not alleged any other custom of SCDC which violated his rights.  There is no genuine question of material fact on this issue, and Defendant Judkins is entitled to summary judgment as a matter of law on the Plaintiff's excessive force official capacity claim.

## IV.    CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 19) be **GRANTED IN PART and DENIED IN PART**.

Summary Judgment should be GRANTED regarding Plaintiff's free exercise of religion claim against Defendant, Sammy Rogers, in his official capacity.

Summary Judgment should be DENIED regarding Plaintiff's free exercise religion claim against Defendant, Sammy Rogers, in his individual capacity.

Summary Judgment should be GRANTED regarding Plaintiff's excessive force claim against Defendant, Officer Judkins, in his official capacity.

Summary Judgment should be DENIED regarding Plaintiff's excessive force claim against Defendant, Officer Judkins, in his individual capacity.

The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 22nd day of July 2021.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE